whenever you're ready. Yes, good morning, Your Honor. I made it please the court. My name is Alicia Cobre and I represent the petitioner Angelo Lomanto. The district court erred in denying Mr. Lomanto's petition for four principal reasons. First, the petition was filed within one year from the date of the wrongful retention, meaning that the now settled defense is not available. And that's for two reasons, Your Honor, and the alternatives. First, Mr. Lomanto in a text message on August 24th expressly consented to the children being returned on August 26th, which is the day one year later he filed his petition. There was nothing in the record to suggest that this limited consent was ever withdrawn. Second, the district court found that the parties had agreed the children would be returned on August 28th, 2021. That district court explained why there were other events that suggested that your client knew before then that the mother wasn't going to return them. Now, I understand that that's debatable, but the district court found that he knew before the return date and therefore that started the clock. Yes, and our argument with respect to that, Your Honor, is that if the parties had agreed, once the parties had agreed that August 28th was the applicable date, then that was the date of the wrongful retention, regardless of his knowledge. My client went to the police in Spain before the return date because he was so obviously aware of the fact that this mother was not going to return the children. I mean, I don't know how you can say, look, no matter what she told me, no matter what I did, I didn't have to do anything till one year from October 28th. Yes, Your Honor, I mean, I think our argument is that regardless of the fact, even, and we're not conceding, but even if one were to assume that he was on notice and had withdrawn his consent, that nonetheless, it's the date of the agreement that governs. Is that a matter of, I'm trying to figure out whether you're making an evidentiary argument that on these facts it was clear or whether you're making a legal argument, there's a matter of law in these wrongful retention cases, the date of the originally agreed upon return, if it's later than the date when the intent to wrongfully retain is announced, becomes the date, regardless of what the communications are. Thank you, Your Honor. So both, but our principal argument is the legal one. So we are arguing for a rule, which this court has never actually determined yet, but we are arguing for a rule that when there is an agreement between the parties for an agreed upon return date, that it is that date that governs the start for the one year expiration. And is that true whether the expressed intention to deviate from that return date is communicated before or after that date? In other words, in a scenario where that date comes and goes, and a week later, it's like, hey, where are you? Where are the kids? And Mott says, I'm not bringing them. It's still the August 28th rather than the week later? Well, Your Honor, I think that that's right. I mean, I think it is the expectation of the parties as exhibited through their agreed upon, the agreement that that would be the date that governs, regardless of whether it, regardless, yeah. Oh, I'm sorry. No, just because if that agreement changes and it is an agreed upon change, it seems that that would also, under what you're suggesting, continually move the relevant, the trigger date, if you will. Yes, Your Honor. So certainly the parties can have a subsequent agreement and that may be expressed or implied. But is that what, I mean, it seems to me that what the date is supposed to be about is the question of notice. When the party had notice, there's a problem. There's a wrongful retention. And so the fact that the parties may still negotiate and talk subsequent to that date when you had notice, that that should be the point where we start counting doesn't seem to be consistent with what it's trying to get at here. Well, Your Honor, I think when there's an agreement between the parties and there's an expectation that the children are going to be staying where they are in their, you know, the environment that they've been moved to, you know, I think it would be kind of counterintuitive to say that that date could be moved forward for two reasons. One is because that would turn essentially any parent, you know, into an abducting parent once, for example, a prior agreed upon consent was removed. And that, you know, that I think would not be the, was not the intention of the convention. It would turn, so if the non-abducting parent were to say, were to say, change their mind and say, you know what, even though we had agreed on July 1st, I want the children back two months earlier, then that turns the parent who had, you know, taken the child under the expectation they'd be able to keep them for a period of time into an abductor, against whom a hate petition would be filed. But the other problem with a rule like the one the district court here went along with, which again is only relied upon by out of, by a third circuit case which actually arises in a different context, the other problem with it is that you're expanding the now settled defense here. And you're expanding it by essentially elongating the well-settled defense, you know, comes into play. Your basic- Couldn't your rule have the opposite effect too? I'm imagining a scenario where, let's say the family makes, travels abroad in June with a plan to return on August 28th, and on June 10th, traveling parents is not going to return them then. On your view, it wouldn't be right to initiate a hate convention action for return of the children until August 28th. That's true. And so that, I'm just, I'm thinking there might be, that might be incongruous. Well, I think it's true that it would, that under our rule, you know, it would not be right until, until the date of the agreement came. But that was the expectation of the parties. And as between a rule that says we kind of follow the initial agreement and expectation that the parties had for when the child should be returned, and a rule that such that, you know, it comes into play on an earlier date than it otherwise would have, which is exactly what happened here. The now settled defense came into effect earlier than it would have had, were the rule to be that it was the expectation of the parties. I think it's the expectation of the parties that would be the one that should, that should govern. If we, if we are not persuaded by your argument that it was brought within the one-year limit, what, what do you want to say to us about the district court's findings about declining to send the children back because they were settled in the United States? Well, Your Honor, I mean, so two things in that regard. One is, you know, our argument is the children were not settled in the United States. I know that, but the point is this is a fact finding. And so our review is deferential. So what's the, what's the error by the district court here? I think if you're, I think if Your Honors were to, were to find that way, then our argument would be that the district court abused its discretion because the aggravating circumstances in this case are so severe that, that regardless, and as the case law explains, regardless of the finding of an affirmative defense, the district court nonetheless should have sent the children back. And those aggravating circumstances are the fact that the mother acknowledged that she removed them unlawfully? No, Your Honor. The three aggravating circumstances are one, that this was a planned and premeditated abduction of the children, that the mother had basically gotten the consent of the father to remove the children by knowing that she had no intention of removing the, of bringing the children back to the United States. And those were text messages as early as March of 2021, whereas she induced him to sign a consent in June of 2021 to bring the children. The fact that the mother cut off all communications with the father for a period of a year, which the, which the evidence in this case showed actually contributed to her being able to assert the affirmative defenses that she did, because it contributed to the argument that the children were well settled and, and to the fact that the children, you know, wanted to stay in the United States. And, and, and the fact, as we argue in our brief, that the mother was in violation of Spanish court orders, which the district court here gave no comedy to. The district court, the Spanish courts, and I see my time has expired, but if I, if I may just finish the point. Yes. Thank you. That the district court gave no, no consideration whatsoever to Spanish court orders that the, that the, the appellant, Ms. Agbelusi submitted herself to the jurisdiction of the Spanish courts and fully litigated the issue of the abduction and was ordered to return the children. And so. I'm not sure how you, how we would conclude that the district court gave no weight to it. It did discuss the Spanish courts and it recognized that the Spanish courts themselves were not acknowledged the limited nature of their authority, given that the children, under the Hague convention, given that the children were physically in the United States. But Your Honor, the Spanish court did have authority to issue an order. Over her. They had jurisdiction over her. I understand that. And she flouted it. And I guess if she went back to Spain, she would be subject to consequences. Yes, Your Honor. Yeah. Okay. But that still doesn't get us into whether the children were settled. I mean, I understand that someone else might reach a different conclusion here, but of course, I did not have the opportunity to see the parties question the children, etc. I'm trying to figure out how I find error by the district court in its conclusion. So again, so our first argument with respect to the one year is that there's a clear text message that was introduced into evidence at trial. Yeah, I understand. But I understand what Your Honor is saying. If we go down the path of finding that it was not filed within one year and you don't agree with our arguments with respect to whether the children are factually settled, then I think our argument there is that the district court abused its discretion, which is being able to send the children back despite the affirmative defenses because of the aggravating factors. I have one question. One of the reasons the district court thought the objections of the older child were relevant was that it identified a fear in the older child that if he went back to Spain, the father wouldn't allow the mother to see him. It seems to me that's the kind of thing that could be worked out in advance. I mean, even through a Spanish court, I've seen this in parallel situations where the foreign country says, yes, the child has to be returned, but the parent in that country has to give the other parent some access to the child. I mean, couldn't you have worked that out in Spain? Of course, Your Honor, but the evidence was pretty clear on the record that what happened here was that during the period of time when the mother cut off all communications with the father, there was a great deal of influence and things were told to the children that had no basis in reality. Well, the court found that the older child was speaking his own views, not subjected to the mother's influence. That's the finding we have. Well, Your Honor, I understand that. I mean, I think the evidence is in many ways contrary to that. Dr. Fernandez's report made clear that the older child originally had alleged some serious physical abuse at the hands of her mother here in New York, but then retracted it. And the psychologist in this case, who was court appointed, found that that change was a result of the undue influence being exerted by the mother during the period of non-communication. And really, that finding of the district court was erroneous. That's our argument. Thank you. Thank you. Mr. Kober, you have some rebuttal. Thank you, Judge. If you may please, the court. Good morning. Brendan Blaze on behalf of Respondent Apelli Antonia Agbalusi. I'd like to start by emphasizing, as Judge Radcliffe recognized, that Judge Ekin made extensive factual findings here and issued a thoughtful opinion after a trial that lasted more than a week. Those findings included that Ms. Raimondo was on clear notice no later than August 24th, 2021, that Ms. Agbalusi did not intend to return the children to Spain, and that his claims of confusion were not credible. That he told Ms. Agbalusi on August 24th, 2021, that he did not consent to the children remaining in the United States, and that he objected so strongly that he reported the children kidnapped in police reports that he filed the next day, in which he signed under oath that they were correct. I was wondering what you make of the point that your adversary, your friend on the other side, raises regarding the fact that there were representations being made that, oh, actually, no, I'm going to bring the children back. How do we consider that at all? Well, so first, Your Honor, I think that that's foreclosed by the district court's findings, that there was no confusion, there was notice, and there was an objection. But most fundamentally, the different tests that courts have adopted are all getting at consent, the scope of the left-behind parents' consent to the children remaining abroad. And so here, Mr. LaMonto very clearly did not consent for them to remain in New York. And Ms. Agbalusi, by rejecting his proposal that they come back on the 26th, there was no agreement exceeded his consent. I think that Abu Haidar from the D.C. Circuit recognizes that, you can vitiate existing consent by acting in a manner inconsistent with it. And that's what Ms. Agbalusi did here by saying, we are not returning. And then Mr. LaMonto withdrew his consent. That's not a controversial proposition, as my colleague suggests. But in fact, courts throughout the country have recognized that a parent may withdraw consent even after it's given. So for that reason, it does not matter that the original date that they agreed to is a timing issue. Your client's conduct is hardly laudable here. If this, if the father here had filed his hate petition three days earlier, the presumption would have been completely different and there would have been a strong likelihood these children would have been back on a plane to Spain. So now because you argue it's late, and I'll assume for purposes of this next question that we agree with you on that, we deal with settlement. On a two-day late filing, it would seem to me there might be some question about, well, they ought to be really well settled. It's not like this happened ten years later or something like that. We're talking about a three-day difference between back on the plane and possibly staying in the United States. And I'm wondering how well settled this record is. I mean, basically the district court found that the children were settled in school and had friends. But that's based on, what, being in the country a year, a year and a half? I mean, children move all the time, change friends, change schools. I'm not sure why that got the weight that the district court gave it. You want to help me out? Yes, Your Honor. Please. So first I'd start by emphasizing that to have a hate convention case, there has to be wrongful removal or retention. And so it's not the case that a parent's actions necessarily render a child not well settled. But as the Supreme Court has recognized, the one-year period intentionally, the contracting states recognize that it is a bit arbitrary, but that it is a gating issue to allow the consideration of other- I understand that, but that's my point about the difference between one year and two days and five years or ten years, where the settlement of the child is more obvious. Here we're talking about children who were in school and developed friendships over one year. How is that well settled, given that we all know children, parents get transferred, whatever, move after a year? It's not a particularly traumatic experience. Yes, Your Honor. So the Well Settled Defense recognizes that it can be re-traumatizing to children to remove them once they are settled. And here the district court was presented with ample evidence through photographs, videos, testimony, school records, and by meeting with the children, that they were thriving academically, that they had close friendships through their school and their church communities, that they regularly attend church and they've made friends both with adults and with children at the church, that they have extensive relationships with their family in the United States, and that their residence in the shelter is stable. They've been there, they go to programming, they have sleep-away camp, and that Miss Agbalusi is able to meet their needs. The district court did not find that any of the factors it considered weighed against a settlement, or excuse me, a finding of a well settled. How are they going to get legal status? I mean, because that's another factor that we sometimes don't see in cases. These children may very well be moved out of the country because they have no legal status here, am I right? You're correct, Your Honor, that the district So how are they going to get legal status? Walk me through that. Well, so first, Your Honor, there is record evidence that Miss Agbalusi has applied for grounds that she's married to a U.S. citizen. She's remarried now to a U.S. citizen? I mean, I'm trying to find out. She was never married to Mr. Lamonto, but she's now married. Right, right, so now she's married to a U.S. citizen. Yes, Your Honor. And how is that, and then her children would get status on that basis too? She would then apply for them and their Now, as I understand it, she doesn't live with her U.S. citizen husband, right? She's in the shelter and he's somewhere else? Yes, Your Honor. And he's met the children once, or not at all, or something like that? That's correct, Your Honor. This does not paint a favorable picture. You understand that, right? Well, I don't think that there is anything in the record, Your Honor, or in the court's findings to that effect. It was not a focus at trial. Well, that may be a question as to whether it should have been. I mean, there was an opportunity for cross-examination, Your Honor, and the petitioner's counsel did not elicit that at trial. The district court had nothing before. That would suggest that there was a concern there. Can I ask a question about the mature child defense? I don't want to get into the merits of the decision, except insofar as I understand the court's reasoning, and I know it was an alternative rationale. But in the context of that alternative rationale, the court made a mature child finding as to the older child, and then said, and it would be horrible to separate them, implicitly suggesting that the younger child got sort of swept in under the older child's mature child defense. And I wonder whether there's any legal basis for that. Yes, Your Honor. So, the courts in this circuit, including this court, have recognized in Armini v. Vittori, that it's appropriate to decline to separate siblings when there is a sibling relationship that should be protected, even if only one of those siblings appropriately is subject to an affirmative defense. And that was the district court's finding here, that that was the case. But that was the flip side, right? That was a case in which the court declined to return someone... I'm not going to say my question, because it will show that I'm not a law professor. I believe, Your Honor, in that case, that a child was able to assert that there would be a grave risk of harm with respect to a particular child. And in that circumstance, although not limited to that, but just those were the facts in that case, the court determined that it was appropriate for the district court not to order return of both children. I guess, wasn't it in that case that the mature child defense could have applied, but the court didn't exercise discretion in the mature child defense so that the children would stay together, rather than sweeping in the second child? I thought it was the flip side of what happened here, but maybe I'm misremembering. I don't believe that that is Armini, Your Honor. I believe that there is a case out there that I'm not recalling, but that was not the Armini case. Okay. Thank you. Unless the court has any questions, I would just reiterate that the district court's findings warrant deference, and that the district court found the children are well settled and thriving in the United States, and that RAL has a strong objection to returning to Spain. I would ask that the court affirm. Thank you. Thank you. So, thank you, Your Honors. Just very briefly on a couple of points. First, just as we made clear in our brief, with respect to the now settled defense and the one-year determination, that review is, your review on that, on that particular issue is de novo,  and the one-year determination. Is an application of facts to the, to the, to the, to the words and the meaning of the convention. So, so on that, on that, on that de novo review, your honors should find that Mr. Lamont does August 24th text message in which he expressly consented to the children being brought back on August 26th. Was means that the petition was filed within one year. There's again, there's not, there was nothing to suggest that that was withdrawn. And the fact that he may have gone into a police station and reported the children that reported that the children were kidnapped or were, or weren't coming back. Doesn't affect what he told Ms. About when, when she can bring the children back. So he did file within one year. I think the other, just very briefly to touch on the mature child defense, I think the case law is pretty clear. And when you look, when you measure the facts up against the case law here, that there was no objection. There was a preference that was stated. There was talk about a preference to stay here in school and the educational and vocational opportunities, which is, which under, under the cases that we cited in our brief, and we haven't seen anything contrary to that is would not be sufficient to show a mature child defense. And I, and I think just, just very briefly to judge Radji's point in questioning my colleague, you know, there, the, the, the and I'm sorry, I see my time is about to expire, but if I may just finish the point, there is, you know, Ms. Agbalusi here should not get the benefit of affirmative defenses that are result really of her unclean hands. The record is undisputed and the district court found that she cut off all contact from the children for nearly a year, did not took the phone cell phone away from the older child with whom the father had a loving and caring relationship. Another finding that the district court made and, and basically allowed the children to have a distance from their father such that now she was able to get up and argue in court that while the children are settled, the children don't want to go back. That's the likely consequence of these, of, of Ms. Agbalusi's unclean hands and another reason why this court should reverse. Can I ask one question about just kind of next steps? I understand it. This obviously wasn't a custody determination, although when you get into the mature, the, the well-settled conversation, it starts to look a little bit like it, but I'm assuming that if, if the decision stands, then then your client is free to come into court in New York and initiate an action for custody or visitation. And in theory that could even result in an award of custody to him that takes the children back to Spain or it would result in some sort of visitation Yes, but the operative words there would be in theory, because my client is a person of very limited means and realistically for him to upend his life and come here. This is essentially cutting off this decision, essentially cut, you know, cut off a real, any kind of real meaningful relationship, longterm relationship that he can have with his children. Thank you. Thank you.